[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13907
Non-Argument Calendar

_____

Agency No. A099-995-651


BINTABEN UDESH,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 20, 2013)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

Bintaben Udesh, an Indian citizen, through counsel, petitions this court to review the final order of the Board of Immigration Appeals' ("BIA") affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). We deny her petition.

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General or the Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee." A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

INA § 208(b)(1), 8 U.S.C. § 1158(b)(1) (emphasis added). Udesh

Udesh entered the United States illegally in May 2007, and applied for asylum, withholding of removal and CAT protection in February 2008,[1] claiming that she had been persecuted on account of her membership in a particular social group consisting of attractive women who had been sexually harassed by the

---

[1] In June 2007, the Department of Homeland Security served Udesh with a Notice to Appear alleging that she was removable as an alien present in the United States who has not been admitted or paroled. She appeared before an IJ in October 2007, and conceded removability.

2

police.  She feared returning to India because she would be harmed, kidnaped, and tortured by Indian law enforcement officials.[2]

At her merits hearing before an IJ on May 12, 2011, Udesh testified to the persecution she described in her asylum application and introduced as exhibits sworn declarations of her parents and her uncle (which fully corroborated her testimony); a psychological evaluation to the effect that, due to the persecution, she was suffering from a post-traumatic stress disorder; a psychiatric evaluation indicating that she has a well-founded fear of future persecution; and newspaper accounts of other women who complained of sexual harassment by police officers.

The persecution Udesh suffered was at the hands of Police Officer Barot.  In June 2005, at age 22, she became employed as a medical lab technician at the Natraj Laboratory near Tiranja, India, where she grew up.  To get to the laboratory, she had to walk by a police station.  While she was walking to the laboratory one morning, Barot approached her and held her hand—saying "I like you" and "I want to marry you."  IJ Decision at 5.  Barot approached her three or four times a week, as she walked to work.  (He did so always when she was alone; he never approached her if she was accompanied by a friend or a security guard from the laboratory.)  Sometimes, in addition to saying that he wanted to marry her, Barot would "try to kiss her on her cheek and touch her breasts."  *Id.* at 6.  Barot never

---

[2]  She said that her fear was based on encounters with a police officer while she was walking to work; he would make sexual overtures and forcibly kiss her.

approached Udesh, however, when she was accompanied by a friend or a security guard from the laboratory.

Barot's behavior "scared her a great deal and she felt like she wanted to kill herself." *Id.* It "affected her state of mind." *Id.* "She would have . . . nightmares about the police grabbing her, arresting her, kidnapping or killing her." *Id.*

To avoid Barot's encounters, Udesh's parents sent Udesh to live with an uncle in a neighboring city for two months. She returned in September 2005 and resumed working at the laboratory. Barot stopped her one morning and asked her where she had been. He held her hand, but "she was able to get free and run away." *Id.* at 7. This encounter disturbed Udesh so much that she took a few days off from work and stayed home.

Soon, Barot, in the company of two men, came to her home, inquiring as to why she wasn't working at the laboratory. Udesh told Barot to stop harassing her, that she was not going to marry him. He left, but said he would be back. Following Barot's visit, Udesh went to live with her uncle again.

Meanwhile, her parents arranged for her marriage to another man. In February 2006, she married a Tinidadian citizen, who was a permanent United States resident, and then went home to live with her parents (while her request for a Trinidadian visa was being processed). In April 2006, Udesh returned to her job at the laboratory. One day while walking to work, Officer Barot stopped her. On

discovering that she was married, he became angry and said that "he would kidnap her, rape her, and break up her marriage." *Id.* at 8.  From April 2006 to November 2006, when she left India for Trinidad, Barot "harassed her some 40 or 50 times." *Id.*  She contended that "no matter where she lived in India, Officer Barot could and would track her down." *Id.*  As recently as May 8, 2011, four days before her merits hearing before the IJ, her father told her that "Barot [was] still coming by her house as recently as three or four months ago." *Id.*

The IJ found Udesh's testimony credible, but that Officer Barot's behavior, as she described it, did not constitute persecution; that is, considered cumulatively, Barot's harassment, though unfortunate and despicable, caused her no physical harm.  The IJ found alternatively that Udesh failed to establish that she had been persecuted on account of one of the five statutorily protected grounds—specifically, because she was a member of a particular social group. *See Id.*  In his view, young women sexually harassed by the police lacked the requisite social visibility necessary for protection.  Finally, addressing Udesh's applications for withholding of removal and CAT protection, the IJ found that because Udesh failed to demonstrate eligibility for asylum, she failed to meet the higher burden for withholding of removal.  As for CAT protection, he found that she had not presented any evidence that she would be tortured by or in the acquiescence of the Indian government.

5

Udesh appealed the IJ's decision to the BIA; it, in turn, affirmed his decision and dismissed the appeal. The BIA agreed with the IJ that the harm Udesh suffered did not rise to the level of persecution. The BIA also agreed with the IJ's alternative finding that, even if Barot's conduct rose to the level of persecution, Udesh failed to establish that the persecution was on account of a statutorily protected ground.

In support of her petition for review, Udesh argues that she testified credibly that she was sexually harassed by a police officer on account of her status as an attractive woman in India, which constituted a threat to life or freedom, and was an innate characteristic that she could not change. Even if her past harm did not amount to persecution, she still had a well-founded fear of future persecution if returned to India, particularly because she would not feel safe in reporting the officer to the authorities. Udesh also argues that she met her burden for withholding of removal because of the presumption of future persecution created by past persecution, especially given the frequency of women's persecution in India. Furthermore, she demonstrated that it was more likely than not that she would be tortured if she returned to India, by describing the police officer's intentional infliction of severe psychological injury and her unsuccessful attempts to avoid him.

6

We review the decision of the BIA, as well as any portions of the IJ's decision the BIA expressly adopted. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, because the BIA expressly adopted the IJ's decision and otherwise agreed with it, we review both decisions.

An asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To establish eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, such as membership in a particular social group, or (2) a well-founded fear that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(b); *Al Najjar*, 257 F.3d at 1287. In this review, we assume for sake of argument that Udesh suffered past persecution and has a well-founded fear of future persecution. The question is whether the record supports the IJ's and the BIA's finding that she did not suffer persecution on account of a statutorily listed factor, i.e., because she was a member of a particular social group. We think it does.

We have held that a "particular social group" must have sufficient "social visibility," and persecution based on membership in a particular social group should not be defined so broadly that it becomes "a catch-all for all groups who might claim persecution." *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196-98 (11th Cir. 2006). A group of attractive women sexually harassed by

7

government or police officers is very broad, and Udesh presented no evidence of its social visibility. On the contrary, she testified that no one in her surrounding community, apart from her family, knew about Barot's harassment, and that she did not personally know any other women who were harassed by the police. Furthermore, the group's defining attribute would be its persecution by police officers, which we have held is insufficient. *Castillo-Arias*, 446 F.3d at 1198. Because Udesh failed to establish that she was persecuted on account of a statutorily protected activity, we have no basis for disturbing the agency's rejection of her application for asylum.

To qualify for withholding of removal or CAT protection, an applicant must satisfy standards more stringent than those for asylum eligibility. For withholding of removal, Udesh had to show that it is more likely than not that her life or freedom would be threatened on account of her membership in a particular social group if returned to India. For CAT protection, she had to show that it was more likely than not that she would be persecuted or that she would be subjected to severe pain or suffering by, or with the acquiescence of, government officials in India. We agree with the IJ and the BIA that Udesh failed to establish eligibility for withholding of removal or CAT relief.

PETITION DENIED.

8